UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

| | |
|---|---|
| UNITED STATES OF AMERICA, | NO.: 26-mj-80 (KMM/EMB) |
| Plaintiff, | **MOTION FOR GAG ORDER** |
| v. | |
| JOSHUA DOYLE, | |
| Defendant. | |

Booking photos—snapped "in the vulnerable and embarrassing moments immediately after [an individual is] accused, taken into custody, and deprived of most liberties"—fit squarely within this realm of embarrassing and humiliating information. *Karantsalis*, 635 F.3d at 503. More than just "vivid symbol[s] of criminal *accusation*," booking photos convey *guilt* to the viewer. *Id.* (emphasis added). Indeed, viewers so uniformly associate booking photos with guilt and criminality that we strongly disfavor showing such photos to criminal juries. *See United States v. Irorere*, 69 Fed.Appx. 231, 235 (6th Cir. 2003) ("[T]he Sixth Circuit has condemned the practice of showing 'mug shot' evidence to a jury 'as effectively eliminating the presumption of innocence and replacing it with an unmistakable badge of criminality.'" (quoting *Eberhardt v. Bordenkircher*, 605 F.2d 275, 280 (6th Cir. 1979))); *see also United States v. McCoy*, 848 F.2d 743, 745–46 (6th Cir. 1988) (finding the district court erred in overruling an objection to lineup photos, which "suggest that [the defendant] is a 'bad guy' who belongs in jail"). This alone establishes a non-trivial privacy interest in booking photos.

*Detroit Free Press Inc. v. Unites States Department of Justice*, 829 F.3d 478, 482 (6th Cir. 2016).

In January of 2013, the Detroit Free Press requested booking photos of four individuals under indictment and awaiting trial. *Detroit Free Press, Inc. v. United States Department of Justice*, 16 F.Supp.3d 798, 800 (E.D. Michigan 2014). The United States

1

Marshal Service, a subordinate law enforcement bureau within the Department of Justice, denied the request, citing 5 U.S.C. § 552(b)(7)(C). *Detroit Free Press, Inc. v. United States Department of Justice*, 16 F.Supp.3d at 801.  The DOJ defended the USMS and three years later the Sixth Circuit Court of Appeals joined the prevailing national legal view that an individual has a privacy interest in their booking photo, a privacy interest the DOJ was right to protect.  In reaching this conclusion Chief Judge Cole wrote:

> Twenty years ago, we thought that the disclosure of booking photographs, in ongoing criminal proceedings, would do no harm. But time has taught us otherwise. The internet and social media have worked unpredictable changes in the way photographs are stored and shared. Photographs no longer have a shelf life, and they can be instantaneously disseminated for malevolent purposes. Mugshots now present an acute problem in the digital age: these images preserve the indignity of a deprivation of liberty, often at the (literal) expense of the most vulnerable among us. Look no further than the online mugshot-extortion business. In my view, *Free Press I*—though standing on solid ground at the time—has become "inconsistent with the sense of justice." *See* B. Cardozo, The Nature of the Judicial Process 150 (1921). These evolving circumstances permit the court to change course.

*Detroit Free Press Inc. v. Unites States Department of Justice*, 829 F.3d at 486.

The DOJ has a policy manual.[1]  The Justice Manual is prepared under the supervision of the Attorney General and sets forth the internal policies and procedures of the DOJ.[2]  The Justice Manual instructs,

> **1-7.100 – General Need for Confidentiality**
>
> Much of DOJ's work involves non-public, sensitive matters. Disseminating non-public, sensitive information about DOJ matters could violate federal laws, employee non-disclosure agreements, and individual privacy rights; put a witness or law enforcement officer in danger; jeopardize an

---

[1] www.justice.gov/jm/justice-manual
[2] www.justice.gov/jm/jm-1-1000-introduction

2

> investigation or case; prejudice the rights of a defendant; or unfairly damage the reputation of a person.
>
> DOJ personnel should presume that non-public, sensitive information obtained in connection with work is protected from disclosure, except as needed to fulfill official duties of DOJ personnel, and as allowed by court order, statutory or regulatory prescription, or case law and rules governing criminal and civil discovery. Other than as necessary to fulfill DOJ official duties, disclosure of such information to anyone, including to family members, friends, or even colleagues, is prohibited and could lead to disciplinary action. Unauthorized disclosures of sensitive personal or proprietary information could lead to criminal prosecution or administrative action.[3]

In *Detroit Free Press, Inc.* the DOJ argued that booking photos should be considered non-public, sensitive information. Code of Federal Regulations also reiterates the confidentiality of booking photos,

> Personnel of the Department of Justice should take no action to encourage or assist news media in photographing or televising a defendant or accused person being held or transported in Federal custody. Departmental representatives should not make available photographs of a defendant unless a law enforcement function is served thereby.

28 C.F.R. § 50.2(b)(7).[4]

Beyond the privacy interests of the individual depicted in the booking photo, there are also significant Constitutional due process reasons why an individual's booking photo should not be disclosed. Again, as the Justice Manual instructs,

### 1-7.610 - Concerns of Prejudice

> Because the release of certain types of information could prejudice an adjudicative proceeding, DOJ personnel should refrain from disclosing the

---

[3] www.justice.gov/jm/jm-1-7000-media-relations#1-7.110
[4] The USMS policy also follows 28 C.F.R. § 50.2(b)(7). www.usmarshals.gov/sites/default/files/media/document/booking-photography-disclosure-policy.pdf

3

following, except as appropriate in the proceeding or in an announcement after a finding of guilt:

A. Observations about a defendant's or party's character;

B. Statements, admissions, confessions, or alibis attributable to a defendant or party, or the refusal or failure of the accused to make a statement;

C. Reference to investigative procedures, such as fingerprints, polygraph examinations, ballistic tests, or forensic services, including DNA testing, or to the refusal by the defendant to submit to such tests or examinations;

D. Statements concerning the identity, testimony, or credibility of prospective witnesses;

E. Statements concerning anticipated evidence or argument in the case; and

F. Any opinion as to the defendant's guilt, or the possibility of a plea of guilty to the offense charged, or the possibility of a plea to a lesser offense.

DOJ personnel should not encourage or assist news media in photographing or televising a person held in custody. DOJ personnel should not voluntarily disclose a photograph of a defendant unless it serves a law enforcement function or unless the photograph is already part of the public record in the case.[5]

At 3:48 pm on January 28, 2026, Joshua Doyle appeared before the District Court on a felony criminal complaint. (ECF No. 5). At the time of his appearance the case was sealed.[6] (ECF No. 4). The Government requested the case be sealed, in part "for the safety of officers conducting the investigation…". (ECF No. 3 at 2). Prior to his appearance the

---

[5] www.justice.gov/jm/jm-1-7000-media-relations#1-7.610
[6] Magistrate Judge Foster noted in a related matter that Attorney General Bondi's X posts violated the Court's order sealing the case. *Unites States v. Flores*, 26-mj-57 (PAM/DJF)(ECF No. 26 at 2).

United States Attorney General Pam Bondi posted on X a number of posts related to Mr. Doyle. First, at 12:53 pm she posted[7],



Then at 1:10 pm she posted a "booking" style photo of Mr. Doyle.[8] Mr. Doyle appears in the photo facing the camera next to a Homeland Security Investigations employee who appears with his/her back to the camera with the words POLICE/HSI prominently displayed.

---

[7] x.com/AGPamBondi/status/2016585421027754465?s=20
[8] x.com/agpambondi/status/2016589801168732583?s=51&t=u6ThTrWYSFSbLrozMCnjVQ

In a related matter currently before the District Court, is a motion for an evidentiary hearing regarding additional X post by Attorney General Bondi. *See United States v. Paul E. Johnson*, 26-mj-81 (KMM/SGE) (ECF No. 13). In his motion, Johnson seeks an evidentiary hearing to gather evidence to support a motion to dismiss for malicious prosecution and outrageous government conduct. 26-mj-81 (KMM/SGE) (ECF No. 13 at 5). In response to Johnson's motion, the Government states that the Justice Manual does "not create substantive rights for defendants." (ECF No. 34 at 5). And then, without offering any explanation, states, "In any event, the government would assert that a law enforcement purpose was served." (ECF No. 34 at 6).

The Supreme Court has long held that pre-trial publicity implicates dues process. *See Beck v. Washington*, 369 U.S. 541, 557 (1962). In order to protect his due process rights, Mr. Doyle seeks a gag order prohibiting the Government from making further statements about Mr. Doyle and an order directing Attorney General Bondi to remove her X posts regarding Mr. Doyle.

While gag orders are a restraint on speech and, as such, is "the most serious and the least tolerable infringement on First Amendment rights" sometimes unrestricted exercise of First Amendment rights can imperil the administration of fair criminal trials. *Nebraska Press Ass'n v. Stuart,* 427 U.S. 539, 559 (1976). "Although litigants do not surrender their First Amendment rights at the courthouse door, those rights may be subordinated to other interests that arise" during a criminal trial. *Seattle Times Co. v. Rhinehart,* 467 U.S. 20, 32 n. 18 (1984). This clash between the First and Sixth Amendments occurs when trial publicity prejudices a defendant. *See Stuart,* 427 U.S. at 547–48 (noting that this tension

first arose in American history during the trial of the British soldiers involved in the Boston Massacre). As the Supreme Court explained in 1966: "Due process requires that the accused receive a trial by an impartial jury free from outside influences. Given the pervasiveness of modern communications and the difficulty of effacing prejudicial publicity from the minds of the jurors, the trial courts must take strong measures to ensure that the balance is never weighted against the accused." *Sheppard v. Maxwell,* 384 U.S. 333, 362 (1966). To safeguard these Sixth Amendment rights to a fair trial, courts have issued gag orders against defendants, trial attorneys, and even the press itself. *See, e.g., United States v. Brown,* 218 F.3d 415 (5th Cir.2000) (upholding gag order against trial participants). The Supreme Court has instructed that regulating attorney speech does not implicate the same First Amendment concerns as the public or the press. See *Gentile v. State Bar of Nevada,* 501 U.S. 1030, 1074 (1991).

The overall purpose of gag orders is to address "two principal evils: (1) comments that are likely to influence the actual outcome of the trial, and (2) comments that are likely to prejudice the jury venire, even if an untainted panel can ultimately be found." *Gentile,* 501 U.S. at 1075. Here the massive public reach of Attorney General Bondi's X post implicates both of the "evils" that concern the Supreme Court. Her X post stating, "NOTHING will stop President Trump and this Department of Justice from enforcing the law" is a partisan statement from an agency head; and is a sharp departure from past United States Attorneys who have done everything possible to maintain the appearance of neutrality and independence. Her X post is in essence a rallying call to over half the population that people like Mr. Doyle are standing in the way of President Trump

7

and his policies. Her X post also attempts to undermine Mr. Doyle's presumption of innocence by asserting that Mr. Doyle has been "resisting and impeding our federal law enforcement agents." This statement coupled with Mr. Doyle's "booking" photo is prejudicial to Mr. Doyle and falls far outside of the customary protections afforded to accused in the United States. These X posts and any future statements create an unacceptable risk of prejudice that violates Mr. Doyle's due process rights. A gag order in this case returns Mr. Doyle's prosecution to same standard of due process that has been the norm in this District for decades. Requiring Attorney General Bondi to delete her X post minimizes the ongoing damage that the Government has already been done. Requiring the Government to abide by its own Justice Manual does not unduly limit the Government's First Amendment rights, it simply ensures the Constitutional right of due process.

Dated: March 12, 2026.                                    Respectfully submitted,

                                                               *s / Aaron J. Morrison*
                                                               AARON J. MORRISON
                                                               Attorney No. 0341241
                                                               Attorney for Mr. Doyle
                                                               107 U.S. Courthouse
                                                               300 South Fourth Street
                                                               Minneapolis, MN  55415