**UNITED STATES DISTRICT COURT**
**DISTRICT OF MINNESOTA**

| | |
|---|---|
| United States of America, | Case No. 26-MJ-80-KMM-EMB |
| Plaintiff, | |
| v. | **ORDER AND REPORT AND RECOMMENDATION** |
| Joshua Doyle, | |
| Defendant. | |

Before the Court are three non-dispositive and three dispositive pre-trial motions filed by Defendant Joshua Doyle.  The dispositive motions have been referred to me for a report and recommendation.  *See* 28 U.S.C. § 636; D. Minn. L.R. 72.1.  I order the three non-dispositive motions denied and recommend that the three dispositive motions be denied.

## I.    Background

On January 26, 2026, the Government filed a complaint alleging that Defendant Joshua Doyle "did forcibly assault, resist, oppose, impede, or interfere with . . . Victim 1, a United State[s] Homeland Security Investigations Special Agent" performing official duties, and made physical contact with the victim, in violation of 18 U.S.C. § 111(a)(1).  (Dkt. No. 1.)  An affidavit signed by Homeland Security Investigations ("HSI") Special Agent Richard Berger accompanied the complaint.  (Dkt. No. 1-1.)  Magistrate Judge Dulce Foster signed the complaint.  (Dkt. No. 1.)

1

Also on January 26, the Government moved to seal the case, reasoning that "this matter involves an ongoing investigation" and that "premature disclosure of [investigative] information could jeopardize the ongoing investigation into the alleged criminal offense and potentially the privacy of individuals who may ultimately not be indicted." (Dkt. No. 3 ¶¶ 1, 3; *see also* Dkt. No. 1.)  The Court granted the seal motion on January 26.  (Dkt. No. 4.)

On January 28, Mr. Doyle had an initial appearance on the complaint before Magistrate Judge Foster.  (Dkt. No. 5.)  The Government moved to unseal the case, and the Court granted that motion.  (*Id.*)

The following week, on February 3, the Government filed a misdemeanor information charging Mr. Doyle with one count of violating 18 U.S.C. § 111(a)(1).  (Dkt. No. 12.)

On March 12, 2026, Mr. Doyle filed four motions:

1. a non-dispositive motion for a gag order (Dkt. No. 19),

2. a dispositive motion to dismiss the information for failure to state an offense under Federal Rule of Criminal Procedure 12(b)(3)(B)(v) (Dkt. No. 20),

3. a dispositive motion to dismiss for lack of probable cause (Dkt. No. 21), and

4. a non-dispositive motion for disclosure pursuant to Federal Rule of Criminal Procedure 6(e) (Dkt. No. 22).

The Government filed responses opposing the motions (Dkt. Nos. 25–28) along with an ex parte letter (Dkt. No. 29) concerning Mr. Doyle's motion for disclosure (Dkt. No. 22).

The Court held a hearing on the motions on April 3, 2026, and ordered the Government to file supplemental briefing on the motion for disclosure. (Dkt. No. 30.) At the hearing, counsel for Mr. Doyle orally made two additional motions:

> 5. a dispositive motion to dismiss the information as duplicitous, and
>
> 6. a non-dispositive motion for a Bill of Particulars.

Mr. Doyle formalized these two oral motions in written filings after the hearing (Dkt. Nos. 32, 33). The Government then filed a Bill of Particulars (Dkt. No. 37) and a response opposing the motion to dismiss the information as duplicitous (Dkt. No. 38). The Government also filed supplemental briefing ex parte (Dkt. No. 36) regarding the disclosure motion.

## II.    Discussion

Below, I first discuss the non-dispositive motions for a Bill of Particulars, for disclosure of grand-jury proceedings, and for a gag order. I deny the first two motions as moot and deny the third. Next, I discuss the dispositive motions to dismiss the information on various grounds and make recommendations to this Court.

### A. Non-dispositive motions

### 1. Motion for a Bill of Particulars

Mr. Doyle moved the Court to order the Government to file a Bill of Particulars because he "is uncertain what the Government alleges he did that constitutes a violation of Count 1 of the information." (Dkt. No. 33 at 1.) The Government responded by filing a Bill of Particulars. (Dkt. No. 37).

Because the Government filed a Bill of Particulars without a Court order, I deny Mr. Doyle's motion as moot.

### 2. Motion for disclosure pursuant to Rule 6(e)

Mr. Doyle has moved to disclose any grand jury proceedings in this case pursuant to Federal Rule of Criminal Procedure 6(e). (Dkt. No. 22.) Specifically, Mr. Doyle seeks disclosure of: (1) any "No Bill" returned by the grand jury related to this case and (2) any testimony or evidence presented to the grand jury that resulted in a "No Bill." (*Id.* at 1.) In a sealed, ex parte letter[1] to the Court responding to this motion, the Government stated that "this case was never presented to any Grand Jury, and thus, there was never a "No Bill" nor any transcript of any Grand Jury proceeding." (Dkt. No. 29.) Because no grand jury ever was convened in this case, I deny Mr. Doyle's motion to disclose a grand-jury "No Bill," testimony, or evidence as moot.

---

[1] As discussed below, this Order directs the letter to be unrestricted.

In its supplemental briefing, the Government complains that the fact that it never convened a grand jury is, itself, information protected from disclosure by grand-jury secrecy rules.  (Dkt. No. 36).  The Government relies on Rule 6(e)(2), which states that an attorney for the Government "must not disclose a matter occurring before a grand jury."  Fed. R. Crim. P. 6(e)(2)(B)(vi).  The Government interprets this rule to mean that "even confirming or denying . . . whether a grand jury considered [Mr. Doyle's] case . . . would disclose matters *occurring before the grand jury* and is therefore protected by Rule 6(e)."  (Dkt. No. 36 at 2) (emphasis added).  Thus, according to the Government, disclosing the fact that it never convened a grand jury in Mr. Doyle's case "would undermine grand jury secrecy."  (*Id.* at 4–5.)

The Government cites no case supporting this interpretation of Rule 6(e).  Indeed, most of the cases that the Government cites baldly state that a grand jury was convened before turning to the question of whether proceedings before the grand jury were protected from disclosure under Rule 6(e).  (*Id.* at 2–4 (citing cases).)  This suggests that the fact that a grand jury did or didn't convene may be disclosed without resorting to a Rule 6(e) analysis.

Moreover, in *United States v. Phillips*, which the Government relies on, the Eleventh Circuit held that "the term 'matters occurring before a grand jury' [in Rule 6(e)] has been defined to include anything that will reveal what

transpired during the grand jury proceedings . . . .  Therefore, only documents that reveal some secret aspect of the grand jury investigations should be subject to the restrictions of rule 6(e)."  843 F.2d 438, 441 (11th Cir. 1988) (citing 8 J. Moore, *Moore's Federal Practice* ¶ 6.05[6] (2d ed. 1987)); *see also United States v. Thomas*, 736 F.3d 54, 65–66 (1st Cir. 2013) (holding that evidence that was not presented to the grand jury was not subject to the restrictions of Rule 6(e) because that rule implicates only a "matter occurring before the grand jury"); *S.R. Mercantile Corp. v. Maloney*, 909 F.2d 79, 83 (2d Cir. 1990) (holding that "Rule 6(e) does not prohibit disclosure of materials that do not reveal the inner workings of a grand jury"); U.S. Department of Justice, *Federal Grand Jury Practice* 157 (1993) ("Rule 6(e) does not cover all information developed during the course of a grand jury investigation, but only information that would reveal the strategy or direction of the investigation, the nature of the evidence produced before the grand jury, the views expressed by members of the grand jury, or anything else that actually occurred before the grand jury").

Consistent with this line of authority, I find that disclosing the fact that no grand jury was ever convened does not implicate Rule 6(e). Accordingly, I deny the Government's request to maintain the secrecy of its letter and supplemental briefing (Dkt. Nos. 29, 36).

### 3. Motion for gag order

Mr. Doyle moves for a "gag order" based on two posts that he alleges former Attorney General Pam Bondi made "regarding Mr. Doyle" prior to his initial appearance. (Dkt. No. 19 at 6.) Mr. Doyle asks me to "prohibit[] the Government from making further statements about [him]" and to direct Bondi to remove the two posts. (*Id.*)

On January 28, former Attorney General Pam Bondi allegedly made two posts on the social-media platform, X.

In the first post, made at 12:53 pm., she stated:

> I am on the ground in Minneapolis today. Federal agents have arrested 16 Minnesota rioters for allegedly assaulting federal law enforcement—people who have been resisting and impeding our federal law enforcement agents. We expect more arrests to come. I've said it before and I'll say it again: NOTHING will stop President Trump and this Department of Justice from enforcing the law."

(Dkt. No. 19 at 5.)

In the second post, made at 1:10 p.m., Mr. Doyle alleges that Bondi posted a "'booking' style photo" of him. (Dkt. No. 19 at 5.)

Mr. Doyle's case was under seal at the time Bondi made these posts. About two-and-a-half hours after the second post, at 3:48 p.m., Mr. Doyle made his initial appearance. (Dkt. No. 5.) At that proceeding, the Government moved to unseal the case, and the Court granted that motion. (*Id.*)

Mr. Doyle's briefing suggests three separate grounds for a gag order.

First, he suggests that a gag order should issue based on his compelling privacy interest in the booking photos. (Dkt. No. 19 at 1–3.) He relies on a civil, Freedom of Information Act ("FOIA") case, *Detroit Free Press Inc. v. United States Department of Justice,* 829 F.3d 478 (6th Cir. 2016) (en banc). There, a newspaper asked the Government to disclose booking photos of defendants in an active criminal prosecution. *Id.* at 481. When the Government denied its request, the newspaper sued, arguing that FOIA required disclosure. *Id.* The Government argued that nondisclosure of the booking photos was permissible under FOIA's Exemption 7(C). *Id.* at 480.

The court's extensive Exemption 7(C) analysis considered whether the defendants had a privacy interest in the photos and, if so, whether the privacy interest outweighed "the core purpose of the FOIA, which is contributing significantly to public understanding of the operations or activities of the government." *Id.* at 481–83, 485 (cleaned up). The court agreed with the *Government*[2] that defendants generally have "a non-trivial privacy interest" in booking photos. *Id.* at 484. It remanded to the district court to assess whether public interest in understanding government

_____

[2] There is irony in the fact that it was the Government in *Detroit Free Press* that sought to prevent disclosure based on the defendant's privacy interest.

operations or activities under FOIA outweighed the defendants' privacy interests in that particular case. *Id.* at 484–85.

Mr. Doyle plucks from *Detroit Free Press*'s lengthy analysis the holding that defendants have a privacy interest in booking photos; he notes that this is consistent with policy and regulations recognizing that booking photos are sensitive information. (Dkt. No. 19 at 1–4.) But as Mr. Doyle seems to acknowledge, a privacy interest alone doesn't authorize me to issue a gag order. (*Id.* at 6.) Indeed, even *Detroit Free Press* indicates that booking photos may be disclosed under some circumstances. *See* 829 F.3d at 484–85. Mr. Doyle certainly has some privacy interest in his booking photo. But the parties do not provide fulsome discussion of Mr. Doyle's privacy interest weighed against the Government's interests. I therefore reject any suggestion that I can restrain the Government from publicizing the booking photo based solely on Mr. Doyle's privacy interest in it.

Second, Mr. Doyle argues that a gag order should issue because Bondi's X posts violate his Sixth Amendment rights to a fair trial, undermining the presumption of innocence and "creat[ing] an unacceptable risk of prejudice" by tainting "'the minds of the jurors at trial.'" (Dkt. No. 19 at 7–8) (quoting *Sheppard v. Maxwell*, 384 U.S. 333, 362 (1966)).) He claims that Bondi deleting her posts would "minimize[] the ongoing damage that the Government has already done." (*Id.* at 8.)

Mr. Doyle relies on *Beck v. Washington*, 369 U.S. 541, 542–46 (1962), which concerned a high-profile criminal case that received significant, lengthy pre-trial publicity. During jury selection, venire "members were examined by the court and counsel at length." *Id.* at 556–57. Those admitting bias or "preformed opinion" were excused. *Id.* The defendant used all his peremptory challenges. *Id.*

The Court's "study of the voir dire indicate[d] clearly that each juror's qualifications as to the impartiality far exceeded the minimum standards this Court established in its earlier cases." *Id.* at 557. Thus, the Court could "[]not say the pretrial publicity was so intensive and extensive or the examination of the entire panel revealed such prejudice that the court could not believe the answers of the jurors and would be compelled to find bias or preformed opinion as a matter of law." *Id.*

*Beck* concluded: "While this Court stands ready to correct violations of constitutional rights, it also holds that it is not asking too much that the burden of showing essential unfairness be sustained by him who claims such injustice and seeks to have the result set aside, and that it be sustained not as a matter of speculation but as a demonstrable reality." *Id.* at 558 (cleaned up). It held that the defendant there hadn't met this burden. *Id.*

*Beck* thus teaches that even with significant pre-trial publicity, a robust jury-selection process can safeguard against essential unfairness. Here, the two X posts are far less intensive and extensive than the prolonged media campaign in *Beck*.  Rigorous jury selection can safeguard against any potential prejudice caused.  Therefore, I find that Mr. Doyle has not met his burden under *Beck* to demonstrate the "reality" that Bondi's publication of the two X posts will cause essential unfairness at trial in violation of his Sixth Amendment rights.[3]

Third, Mr. Doyle suggests that a gag order should issue because former Attorney General Bondi was a legal representative in this case when she made the posts.  Mr. Doyle acknowledges that prior restraints on speech are strongly disfavored as a serious infringement on the First Amendment rights of the public and the press.  (Dkt. No. 19 at 6.)  But he relies on *Gentile v. State Bar of Nevada,* 501 U.S. 1030 (1991), to argue that these concerns are lessened when the speech being constrained is that of the case's lawyers.  (Dkt. No. 19 at 7.)

---

[3] None of the other cases that Mr. Doyle cites holds that a pretrial gag order is required to safeguard a defendant's Sixth Amendment right to a fair trial. (Dkt. No. 19 at 6–7 (citing *Nebraska Press Ass'n v. Stuart*, 427 U.S. 539 (1976); *Sheppard v. Maxwell*, 384 U.S. 333 (1966); *Gentile v. State Bar of Nevada*, 501 U.S. 1030 (1991); *Seattle Times Co. v Rhinehart*, 467 U.S. 20 (1984); *United States v. Brown*, 218 F.3d 415 (5th Cir. 2000)).)

11

In *Gentile,* the Court considered a challenge to a Nevada Supreme Court rule prohibiting an attorney from commenting about a case to the media if the attorney knew or should have known the comments would "have a substantial likelihood of materially prejudicing an adjudicative proceeding." 501 U.S. at 1033. The Court's earlier opinions "expressly contemplated that the speech of those participating before the courts could be limited," indicating that "a less demanding standard than [the clear-and-present danger standard] established for regulation of the press" applied to legal representatives. *Id.* at 1072–73 (opinion of Rehnquist, C.J.) (citations omitted). *Gentile* therefore held that the "substantial likelihood of material prejudice" standard was constitutionally sufficient to justify proscribing an attorney's extrajudicial comments under the state rule. *See id.* at 1074.

Here, neither party addresses the fact that Bondi is no longer a lawyer in this case[4] or what impact her now-non-legal-representative status has on the applicable standard. But even under *Gentile*'s relaxed standard for lawyers, I find that Mr. Doyle has not met his burden.

---

[4] President Trump announced on April 2, 2026, that Bondi would no longer serve as Attorney General. *See* "Attorney General Pam Bondi out at DOJ," National Public Radio (Apr. 2, 2026), *available at* https://www.npr.org/ 2026/04/02/g-s1-115077/trump-bondi-attorney-general-departure; "Pam Bondi already fired as attorney general, Cabinet official teed up as replacement: sources," Fox News (Apr. 2, 2026), *available at* https://www.foxnews.com/ politics/pam-bondi-already-fired-attorney-general-cabinet-official-teed-up-replacement-sources. (Both webpages last accessed May 13, 2026.)

Bondi's two posts do not amount to a prolonged, overly divulgent, inflammatory mainstream media campaign against Mr. Doyle. *Cf. Sheppard*, 384 U.S. at 361 (observing that front-page headlines repeatedly "divulged prejudicial matters, such as the refusal of [the defendant in a homicide prosecution] to submit to interrogation" or a "lie-detector" test, as reported by the prosecutor and coroner). And if Bondi's posts were reposted by others (a point Mr. Doyle doesn't address), ordering her to delete her original posts wouldn't resolve the problem of potential prejudice. Thus, Mr. Doyle has not shown that prejudice is substantially likely or that the requested remedy could alleviate any likely prejudice. As discussed, jury selection is the best guard against this risk. [5]

---

[5] In a footnote, Mr. Doyle cites *United States v. Flores*, 26-MJ-57-PAM-DJF, in which Magistrate Judge Foster determined that Bondi's pre-initial-appearance X posts of the defendant violated the Court's order sealing the case. (Dkt. No. 19 at 4, n.6.) *See Flores*, 26-MJ-57-PAM-DJF (Order, Dkt. No. 26 at 2). Mr. Doyle does not make that argument here. I therefore do not address whether the X posts violated the Court's sealing order.

Mr. Doyle also cites *United States v. Paul E. Johnson*, 26-MJ-81-KMM-SGE. (Dkt. No. 19 at 6.) There, Magistrate Judge Shannon Elkins found good cause to issue a protective order of pre-booking photos that were taken by law enforcement of the defendant in the hospital and published while the case was under seal. *Johnson*, 26-MJ-81-KMM-SGE (Transcript, Dkt. No. 60 at 9). *Johnson* is procedurally and factually distinct, as Mr. Doyle has not moved for a protective order of pre-booking photos of him in the hospital.

13

## B. Dispositive motions

### 1. Motion to dismiss for failure to state an offense

Mr. Doyle moves to dismiss the information under Rule 12(b)(3)(B)(v), for three independent reasons. (Dkt. No. 20 at 1.) Finding none of them availing, I recommend that the Court deny the motion.

First, Mr. Doyle argues that the information should be dismissed because it omits an essential element of the offense.

"The test of the sufficiency of an indictment is not whether it could not have been made more definite and certain, but whether it contains the elements of the offense charged, and sufficiently apprises the defendant of what he must be prepared to meet, and in case any other proceedings are taken against him for a similar offense, whether the record shows with accuracy to what extent he may plead a former acquittal or conviction." *United States v. Tebeau*, 713 F.3d 955, 962 (8th Cir. 2013) (internal quotation marks and citation omitted).

Section 111 of Title 18 of the United States Code provides: "Whoever . . . forcibly assaults, resists, opposes, impedes, intimidates, or interferes with any [officer or employee of the United States] while engaged in or on account of the performance of official duties . . . shall, where the acts in violation of this section constitute only simple assault, be fined under this title or imprisoned not more than one year, or both . . . ." 18 U.S.C. § 111(a)(1).

14

The information here alleges that Mr. Doyle "did forcibly assault, resist, oppose, impede, intimidate, and interfere with an officer and employee of the United States and of any agency in any branch of the United States Government (including any member of the uniformed services), that is, a Homeland Security Investigations employee, while such officer and employee was engaged in and on account of the performance of official duties, all in violation of Title 18, United States Code, Section 111(a)(1)." (Dkt. No. 12.)

The language in the information tracks the statutory language. But Mr. Doyle argues that the information is defective because it omits a mens rea element included in the Eighth Circuit model jury instructions: that the assault was done voluntarily and intentionally. Dkt. No. 20 at 2.)

This Court has held that an indictment tracking the statutory language of § 111(a)(1) is facially sufficient. *See, e.g., United States v. Lopez*, 25-CR-230-JRT-DJF, 2026 WL 207356, at *3 (D. Minn. Jan. 27, 2026). That's consistent with the general rule that a charging instrument that "tracks the statutory language" is sufficient. *United States v. Sewell*, 513 F.3d 820, 821 (8th Cir. 2008). The information here tracks the statutory language and is sufficient to allow Mr. Doyle "to plead a conviction or an acquittal as a bar to subsequent prosecution." *Sewell*, 513 F.3d at 821. I therefore recommend that this Court decline to dismiss the information on this ground.

15

Second, Mr. Doyle argues that the information should be dismissed because "the lack of any alleged facts in the information is problematic." (Dkt. No. 20 at 2.) He concedes that alleging facts in an information is "not strictly required." (*Id.*) The test, instead, is whether the charging instrument sets forth enough allegations that the defendant can understand the conduct that will be at issue at trial. *United States v. Olderbak*, 961 F.2d 756, 759–60 (8th Cir. 1992). Here, the information sets forth the statutory elements and the time of the alleged incident. (Dkt. No. 12.) The Bill of Particulars provides additional context. (Dkt. No. 33.) This is enough for Mr. Doyle to understand the conduct at issue. I therefore recommend finding that the information alleges adequate facts to withstand dismissal.

Third, Mr. Doyle states that the information here was signed by a U.S. Army Judge Advocate, as was the information in *United States v. Paul E. Johnso*n, 26-MJ-81-KMM-SGE. (Dkt. No. 20 at 2–3.) The defendant in *Johnson* moved to strike the appearance of that lawyer on the ground that the lawyer was prohibited from acting on the Government's behalf in this Court. *Johnson*, 26-MJ-81-KMM-SGE (Motion (Dkt. No. 24) and Amended Motion (Dkt. No. 54). Mr. Doyle's motion argues that "if the motion in *Johnson* is granted, finding U.S. Army Judge Advocates are prohibited from acting on behalf of the Government before this Court, then the information in this case is invalid as it is signed by a U.S. Army Judge Advocate." (*Id.* at 3.)

16

After Mr. Doyle filed his motion, Magistrate Judge Shannon Elkins issued a lengthy, well-reasoned order finding that the Attorney General's appointment of U.S. Army Judge Advocates as Special U.S. Attorneys in this District to prosecute civilians in criminal cases is authorized. *Johnson*, 26-MJ-81-KMM-SGE (Order, Dkt. No. 61 at 10). Magistrate Judge Elkins therefore denied the defendant's motion to strike. (*Id.* at 14.)

Noting that Mr. Doyle conditioned this request for dismissal on success of the motion to strike in *Johnson* and finding Magistrate Judge Elkins's order persuasive, I recommend that the Court reject this ground for dismissal and deny Mr. Doyle's motion.

### 2. Motion to dismiss for lack of probable cause

Mr. Doyle moves to dismiss the information for lack of probable cause under Federal Rule of Criminal Procedure 12(b). (Dkt. No. 21.) The Court should deny the motion because it requires factual findings that are bound up with evidence bearing on his guilt or innocence.

Mr. Doyle "recognizes that an information . . . generally cannot be challenged for lack of probable cause." (Dkt. No. 21 at 1–2 (citing *United States v. Funk*, 412 F.2d 452, 455 (8th Cir. 1969)).) But here, he argues, "'no reasonable construction can be said to charge the offense.'" (*Id.* at 2 (quoting *United States v. Nabors*, 45 F.3d 238, 240 (8th Cir. 1995)).)

17

Specifically, Mr. Doyle claims that "there is simply no evidence the Government can produce in this case that establishes probable cause that any [federal] employee suffered an injury or that a reasonable law enforcement officer would have been in fear of immediate bodily harm." (*Id.* at 3.) In making this claim, Mr. Doyle "ask[s] the Court to take the rare step to look past the charging document and examine probable cause" based on audio interviews of HSI employees. (*Id.*)

A district court considering a pretrial motion to dismiss the charging instrument may not "make factual findings when an issue is inevitably bound up with evidence about the alleged offense itself" because "[t]here is no procedure in federal criminal cases equivalent to the motion for summary judgment in civil cases, and the government has no duty to reveal all of its proof before trial." *United States v. Grubb*, 135 F.4th 604, 607 (8th Cir. 2025) (citations omitted).

Resolving the probable-cause question here would require the Court to make factual determinations about the sufficiency of the evidence under § 111(a)(1). This is the province of the jury. Because I "cannot say definitively that 'trial of the facts surrounding the commission of the alleged offense would be of no assistance in determining the validity of the defense,'" I recommend denying this motion. *Grubb*, 135 F.4th at 608 (quoting *United States v. Covington*, 395 U.S. 57, 60 (1969)).

18

### 3. Motion to dismiss information as duplicitous

Mr. Doyle moves the Court to dismiss the information on the ground that it "alleges two potential offense conducts" in a single count, making the information impermissibly duplicitous. (Dkt. No. 32 at 1.) I recommend denying this motion as moot because the Bill of Particulars filed by the Government after Mr. Doyle filed this motion clarifies that a single alleged offense conduct constitutes the basis of the Government's charge.

The Government must charge multiple, connected offenses in separate counts. Fed. R. Crim. P. 8(a). When the Government joins two or more distinct and separate offenses in a single count, the charging instrument is deemed duplicitous. *United States v. Street*, 66 F.3d 969, 974 (8th Cir. 1995). If that happens, a jury may convict a defendant "without unanimous agreement on the defendant's guilt with respect to a particular offense." *Id.* (internal quotation marks and citation omitted). In other words, six jurors might find the defendant guilty of violating a particular statute based on conduct A, while the other six might find guilt based on conduct B—resulting in a guilty verdict that is not unanimous. Given that risk, a duplicitous indictment must be dismissed. *See id.*

Here, Mr. Doyle states that the information (Dkt. No. 12) alleges a single count of violation of § 111(a)(1) but that the complaint (Dkt. No. 1) alleges two separate assaultive acts. (Dkt. No. 32 at 2.) One involved

Mr. Doyle allegedly kicking the hand of an officer who was trying to receive a cell phone that had been dropped.  (Dkt. No. 1 at 3 ¶ 7.)  The second involved Mr. Doyle allegedly resisting arrest.  (*Id.* ¶ 8.)  Mr. Doyle argues that because "the Government has provided no clarity" on which of the two alleged acts constitutes the basis of the single-count information, the information should be dismissed as duplicitous.  (Dkt. No. 32 at 2.)

The same day that Mr. Doyle filed this motion, he moved for a Bill of Particulars to clarify "what the Government alleges he did that constitutes a violation of Count 1 of the information."  (Dkt. No. 33 at 1.)  As discussed above, the Government responded to that motion by filing a Bill of Particulars.  (Dkt. No. 37.)  The Bill of Particulars alleges that an agent "conducting official law enforcement operations" in a crowded area "dropped a cell phone.  As the agent attempted to retrieve the phone, the Defendant kicked the agent, striking the agent's hand."  (Dkt. No. 37 at 2, ¶¶ 6, 8.)

The Bill of Particulars clarifies that only one alleged offense conduct provides the basis for the assault charge alleged in the information.  I therefore recommend that the Court deny Mr. Doyle's motion to dismiss for duplicity.

## ORDER

Based upon the foregoing, and on all files, records, and proceedings herein, IT IS HEREBY ORDERED THAT:

1. Defendant's motion for a gag order (Dkt. No. 19) is DENIED.  The Clerk's Office is directed to allow public access to the Government's ex parte filings (Dkt. Nos. 29 and 36);

2. Defendant's motion for disclosure under Federal Rule of Criminal Procedure 6(e) (Dkt. No. 22) is DENIED as moot;

3. Defendant's motion for a Bill of Particulars (Dkt. No. 33) is DENIED as moot.

## RECOMMENDATION

Based upon the foregoing, and on all files, records, and proceedings herein, IT IS HEREBY RECOMMENDED THAT:

1. Defendant's motion to dismiss the information for failure to state an offense under Federal Rule of Criminal Procedure 12(b)(3)(B)(v) (Dkt. No. 20) be DENIED;

2. Defendant's motion to dismiss the information for lack of probable cause (Dkt. No. 21) be DENIED;

3. Defendant's motion to dismiss the information as duplicitous (Dkt. No. 32) be DENIED.

Dated: May 13, 2026                    *s/Elsa M Bullard*
                                       Elsa M. Bullard
                                       United States Magistrate Judge

21

## NOTICE

**Filing Objections:** This Report and Recommendation is not an order or judgment of the District Court and is therefore not appealable directly to the Eighth Circuit Court of Appeals.

Under Local Rule 72.2(b)(1), "a party may file and serve specific written objections to a magistrate judge's proposed finding and recommendations within 14 days after being served a copy" of the Report and Recommendation. A party may respond to those objections within 14 days after being served a copy of the objections. *See* D. Minn. L. R. 72.2(b)(2). All objections and responses must comply with the word or line limits set forth in Local Rule 72.2(c).